# Exhibit A

# ADJUSTABLE RATE NOTE
### (1-Year LIBOR Index - Rate Caps)
### (Assumable after Initial Period)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| September 29 , 2006 | BETHESDA | MARYLAND |
|---|---|---|
| [Date] | [City] | [State] |

15630 BLACKBERRY DR N POTOMAC , Maryland 20878
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 629,600.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is National City Mortgage a division of National City Bank
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.375 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on November 1 , 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on October 1 , 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at National City Mortgage Co.
P O Box 17677 , Baltimore, MD 21297-1677
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 3,927.89 . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of October , 2016 , and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**MULTISTATE ADJUSTABLE RATE NOTE - 1-Year LIBOR Index (Assumable after Initial Period) - Single Family - Freddie Mac UNIFORM INSTRUMENT**



Form 5531 3/04
VMP Mortgage Solutions (800)521-7291

Page 1 of 5            Initials:

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding     TWO AND ONE-QUARTER percentage point(s) (     2.250     %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than     11.375     % or less than     2.250     %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than     TWO     percentage point(s) (     2.000     %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than     11.375     %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of     15     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.00     % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.



Form 5591 3/04
Initials: _____

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**(A) UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may



Page 3 of 5

Form 5591 3/04
Initials:

require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**(B) AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:**

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Form 5 3/04

Initials:

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_S. Giovanna D Wood_ (Seal)
SALLY GIOVANNA DIANDERAS WOOD    -Borrower

_Timothy J Wn_ (Seal)
TIMOTHY J WOOD    -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

PAY TO THE ORDER OF
NATIONAL CITY MORTGAGE CO
A SUBSIDIARY OF NATIONAL CITY BANK
WITHOUT RECOURSE
NATIONAL CITY MORTGAGE, A DIVISION OF
NATIONAL CITY BANK

_Tara Schaeffer_
TARA SCHAEFFER
DOCUMENT CONTROL SPECIALIST

*[Sign Original Only]*

PAY TO THE ORDER OF

WITHOUT RECOURSE
NATIONAL CITY MORTGAGE CO
A SUBSIDIARY OF NATIONAL CITY BANK

_Tara Schaeffer_
TARA SCHAEFFER
DOCUMENT CONTROL SPECIALIST

Form 5531 3/04

# INTEREST ONLY PAYMENT PERIOD NOTE ADDENDUM
## TO ADJUSTABLE RATE NOTE

(Index: One-Year London Interbank Offered Rate ("LIBOR") As Published in *The Wall St. Journal* – Rate Caps)
(Not to be Used for Texas Homestead Loans Unless Proceeds Used Only for Purchase Money or Refinance of Purchase Money)

**THIS ADDENDUM TO NOTE PROVIDES FOR A PERIOD OF MONTHLY PAYMENTS OF INTEREST ONLY FOLLOWED BY MONTHLY PAYMENTS OF BOTH PRINCIPAL AND INTEREST. THE INTEREST RATE AND MONTHLY PAYMENT CAN CHANGE DURING AND AFTER THE INTEREST ONLY PAYMENT PERIOD. THIS ADDENDUM LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

This Interest Only Payment Period Note Addendum to Adjustable Rate Note (this "Addendum") is made this **29th** day of **September 2006** and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note of the same date (the "Note") given by the undersigned (the "Borrower") to evidence Borrower's indebtedness to **National City Mortgage a division of National City Bank** (the "Lender"), which indebtedness is secured by a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), of the same date and covering the property described in the Security Instrument and located at:

**15630 BLACKBERRY DR , N POTOMAC , Maryland 20878**

ADDITIONAL COVENANTS:    Unless specifically defined in this Addendum, any capitalized terms shall have the same meaning as in the Note. Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower further covenants and agrees as follows:

I. The Note is modified to provide that the initial one hundred twenty (120) payments due consist of interest only on the unpaid principal balance of the Note ("Interest Only Payment Period") at the interest rates determined in accordance with Section 2 of the Note and Section 4 of this Addendum. Sections 3, 4, 5 and 7(A) of the Note are hereby restated as follows:

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay interest on the unpaid principal balance of this Note during the Interest Only Payment Period, and principal and interest thereafter, by making payments every month.

I will make my monthly payments on the first day of each month beginning on **November 1 , 2006** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and, if the payment includes both principal and interest, it will be applied to interest before principal. If, on **October 1 , 2036** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **National City Mortgage Co. P O Box 17677 , Baltimore, MD 21297-1677** or at a different place if required by the Note Holder.

Addendum to Adjustable Rate Note (Form 5531)
120 Interest Only Payments
Page 1 of 4
(08/05)

**(B) Amount of My Interest Only Payments**

Each of my initial ( 120.00 ) monthly payments will be in the amount of U.S. $ 3,344.75 . These payments are called the "Interest Only Payments." This amount may change in accordance with Sections 3(C) below. No payments of principal are due during the Interest Only Payment Period. The Interest Only Payments will not reduce the principal amount of this Note.

**(C) Monthly Payment Changes and Date of First Principal and Interest Payment**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 4 and 5 of this Addendum.

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Due Date") is November , 2016 , which is the first monthly payment date after the one hundred twentieth (120th) monthly payment is due.

My payment may also change if I make a partial Prepayment as provided in Section 5 of this Addendum. Before the effective date of any change in my monthly payment, the Note Holder will deliver or mail to me a notice of the change as provided in this Note.

Beginning with the First Principal and Interest Due Date, my monthly payment will change to an amount sufficient to repay the unpaid principal and interest at the rate described in Section 4(C) of this Addendum in substantially equal payments by the Maturity Date.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of October , 2016 and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the One-Year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for One-Year U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE-QUARTER percentage point(s) ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine my new monthly payment as follows:

(i) **Principal and Interest Payments Due Beginning With the First Principal and Interest Due Date.** For monthly payments due on or after the First Principal and Interest Due Date, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate determined above in this Section 4(C) in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Addendum to Adjustable Rate Note (Form 5531)
120 Interest Only Payments
Page 2 of 4
(08/05)

### (A) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.375 % or less than 2.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO percentage points ( 2.000 )% from the rate of interest I have been paying for the preceding twelve months. My interest rate will never be greater than 11.375 %.

### (B) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (C) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.     BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. If I make a partial Prepayment during the Interest Only Payment Period, the amount of the monthly payment will decrease until the next Change Date. At the next Change Date during the Interest Only Payment Period, any reduction due to a partial Prepayment may be offset by an interest rate increase. If I make a partial Prepayment after the First Principal and Interest Due Date, my partial Prepayment may reduce the amount of my monthly payments starting with the next Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 7.     BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)     Late Charges for Overdue Payments

If the Note Holder has not received the full amount of my monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of interest, during the Interest Only Payment Period, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

Addendum to Adjustable Rate Note (Form 5531)
120 Interest Only Payments
(08/05)

Page 3 of 4

II.      All other provisions of the Note are unchanged by this Addendum and remain in full force and effect.

By signing below, Borrower accepts and agrees to the terms and conditions contained in this Interest Only Payment Period Note Addendum to Adjustable Rate Note.

_S. Giovanna D. Wood_____ (Seal)
Borrower   SALLY GIOVANNA DIANDERAS WOOD

_____ (Seal)
Borrower

_Timothy J. Wood_____ (Seal)
Borrower   TIMOTHY J WOOD

_____ (Seal)
Borrower

I understand that if I only make Interest Only Payments during the Interest Only Payment Period, at the end of the Interest Only Payment Period the principal balance will not be reduced.

_S. Giovanna D. Wood_____ (Seal)
Borrower   SALLY GIOVANNA DIANDERAS WOOD

_____ (Seal)
Borrower

_Timothy J. Wood_____ (Seal)
Borrower   TIMOTHY J WOOD

_____ (Seal)
Borrower

Addendum to Adjustable Rate Note (Form 5531)
120 Interest Only Payments
(08/05)

Page 4 of 4

# ADJUSTABLE RATE RIDER

(Index: One-Year London Interbank Offered Rate ("LIBOR") As Published in *The Wall St. Journal* – Rate Caps)
(Assumable after Initial Period) (45 Day Lookback)

This Adjustable Rate Rider is made this     29th day of     September 2006     and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note as amended and supplemented by the Interest Only Payment Period Note Addendum to Adjustable Rate Note (collectively the "Note") to     National City Mortgage
     a division of National City Bank
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

     15630 BLACKBERRY DR , N POTOMAC , Maryland 20878

[Property Address]

**THE NOTE PROVIDES FOR A PERIOD OF MONTHLY PAYMENTS OF INTEREST ONLY FOLLOWED BY MONTHLY PAYMENTS OF BOTH PRINCIPAL AND INTEREST. THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INITIAL INTEREST RATE AND MONTHLY PAYMENT DURING AND AFTER THE INTEREST ONLY PAYMENT PERIOD. THE NOTE ALSO LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.     INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of     6.375 %. The First Principal and Interest Due Date is the first monthly payment date after the     120     monthly payment is due. The Note provides for changes in the interest rate and the monthly payments as follows:

**4.     INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A)     Change Dates**
The interest rate I will pay may change on the first day of     October 2016     , and may change on that day every twelfth (12th) month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B)     The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.
The "Index" is the One-year Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

One-year LIBOR Interest Only Rider - Multistate
120 Interest Only Payments
Assumable After Initial Period
(08/05)

Page 1 of 4

If the Index is no longer available, the Note Holder will choose a new index based upon comparable information. The Note Holder will give me notice of this choice.

      (C)     Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE-QUARTER percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine my new monthly payment as follows:

      (i)     **Interest Only Payment Period.** For monthly payments due after the first Change Date up to but not including the First Principal and Interest Due Date, the Note Holder will determine the amount of the monthly payment that would be sufficient to pay the interest that accrues on the unpaid principal that I am expected to owe at the Change Date at my new interest rate determined above in this Section 4(C). The result of this calculation will be the new amount of my Interest Only Payment until the next Change Date unless I make a partial Prepayment as provided in Section 5 of the Note.

      (ii)     **Principal and Interest Payments Due Beginning With the First Principal and Interest Due Date.** For monthly payments due on or after the First Principal and Interest Due Date, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate determined above in this Section 4(C) in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

      (D)     **Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.375 % or less than 2.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO percentage points ( 2.000 %) from the rate of interest I have been paying for the preceding twelve months. My interest rate will never be greater than 11.375 %.

      (E)     **Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first payment date after the Change Date until the amount of my monthly payment changes again.

      (F)     **Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.     TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

**1.     UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:**

      **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

One-year LIBOR Interest Only Rider - Multistate
120 Interest Only Payments
Assumable After Initial Period
(08/05)

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2.          AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

One-year LIBOR Interest Only Rider - Multistate
120 Interest Only Payments
Assumable After Initial Period
(08/05)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_S. Giovanna D Wood._ (Seal)
SALLY GIOVANNA DIANDERAS WOOD Borrower

_____ (Seal)
TIMOTHY J WOOD                Borrower

_____ (Seal)
                      Borrower

_____ (Seal)
                      Borrower

_____ (Seal)
                      Borrower

_____ (Seal)
                      Borrower

_____ (Seal)
                      Borrower

_____ (Seal)
                      Borrower

Page 4 of 4

One-year LIBOR Interest Only Rider - Multistate
120 Interest Only Payments
Assumable After Initial Period
(08/05)

# Exhibit B

33151    295

Lw# ▮
DIANDERAS
ID/F ②

Return To:

National City Bank
P.O. Box 8800
Dayton, OH 45401-8800

SONJA SHRIEVES

Prepared By:

National City Bank
P.O. Box 8800
Dayton, OH 45401-8800

PARCEL I.D. ▮

AFTER RECORDING - MAIL TO:

ARAGON TITLE & ESCROW COMPANY
7415 ARLINGTON ROAD
BETHESDA, MARYLAND 20814

CASE NO.: ▮

Crown Recording
Service

11-21-02

I hereby certify that this instrument was prepared under the supervision of me an attorney admitted to practice before the Court of Appeals of Maryland.

RANDALL M. ROTHSTEIN, ATTORNEY

—————————————————[Space Above This Line For Recording Data]—————————————————

TITLE INSURER:
FIDELITY NATIONAL TITLE
INSURANCE OF NY

PURCHASE MONEY FIRST

# DEED OF TRUST

IMP FD SURE        20.00
RECORDING FEE      20.00
TOTAL              40.00
Rest M006    Rcpt # 68410
MOR    BKP    Blk # 3744
Oct 13, 2006       09:10 a

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   September 29, 2006   , together with all Riders to this document.
(B) "Borrower" is
SALLY GIOVANNA DIANDERAS WOOD and TIMOTHY J WOOD Wife and Husband

**MONTGOMERY COUNTY, MD**

APPROVED BY O

**OCT 1 2 2006**

$ N/A    RECORDATION TAX PAID
$ N/A    TRANSFER TAX PAID

Borrower is the trustor under this Security Instrument.
(C) "Lender" is
National City Mortgage a division of
National City Bank

MARYLAND-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3021

Page 1 of 15        Initials:
VMP Mortgage Solutions, Inc.

2006 OCT 13 A 9:10
FILED MOLLY O. RUPPERT
CLERKS OFFICE
MONTGOMERY C

33151    296

Lender is a **National Banking Association**
organized and existing under the laws of    **United States**
Lender's address is    **3232 Newmark Drive, Miamisburg, OH   45342**

Lender is the beneficiary under this Security Instrument.

**(D) "Trustee"** is    **Lawyers Title Realty Srvc Inc A Virginia Corp**

**(E) "Note"** means the promissory note signed by Borrower and dated    **September 29, 2006**
The Note states that Borrower owes Lender
    **SIX HUNDRED TWENTY NINE THOUSAND SIX HUNDRED & 00/100**    Dollars
(U.S. $    **629,600.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than    **October 1, 2036**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the
Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used in this

Initials: _____

Page 2 of 15                                                    Form 3021  1/01

33151· 297

Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of Montgomery :

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

LOT NUMBERED ONE (1) IN BLOCK LETTERED "R", IN THE SUBDIVISION KNOWN AS "PLAT 11, QUINCE ORCHARD KNOLLS", AS PER PLAT THEREOF DULY RECORDED AMONG THE LAND RECORDS OF MONTGOMERY COUNTY, MARYLAND IN PLAT BOOK 152 AT PLAT NO. 17279.

Parcel ID Number:                                    which currently has the address of

15630 BLACKBERRY DR,                                                      [Street]
N POTOMAC                          [City], Maryland    20878     [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any

Initials:

Page 3 of 15                                                    Form 3021  1/01

33151   298

prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all

Initials:

33151    299

Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Initials: _____

Form 3021  1/01

33151   300

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

Initials _____

Form 3021  1/01

Case 25-10092   Doc 41-1   Filed 03/19/26   Page 22 of 65

33151   301

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate

Initials: _____

Form 3021  1/01

33151  302

building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

Initials

Page 8 of 15                                                                 Form 3021  1/01

33151   303

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials:

Page 9 of 15

Form 3021  1/01

33151   304

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials_____

Page 10 of 15

Form 3021  1/01

33151 305

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the

Initials:

33151   306

Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is**

Initials:

33151 307

not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale, assent to decree, and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement and by such other means as required by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale and by notice to any other persons as required by Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of       Five              % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Borrower, in accordance with Title 14, Chapter 200 of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this Section 22 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee, shall release this Security Instrument and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Possession of the Property.** Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to Section 22 of this Security Instrument.

Page 13 of 15                    Initials: _____                    Form 3021 1/01

33151   308

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

RANDALL M. ROTHSTEIN
(AS TO BOTH)

_____   S. Giovanna D. Wood _____ (Seal)

SALLY GIOVANNA DIANDERAS WOOD -Borrower

_____   _____ (Seal)

TIMOTHY J WOOD                    -Borrower

_____ (Seal)    _____ (Seal)
              -Borrower                         -Borrower

_____ (Seal)    _____ (Seal)
              -Borrower                         -Borrower

_____ (Seal)    _____ (Seal)
              -Borrower                         -Borrower

Page 14 of 15                     Form 3021  1/01

33151   309

**STATE OF MARYLAND,**                    MONTGOMERY   County ss:

I Hereby Certify, That on this   29TH   day of SEPTEMBER, 2006 , before me, the subscriber, a Notary Public of the State of Maryland, in and for the   COUNTY AFORESAID   ,
personally appeared   SALLY GIOVANNA DIANDERAS WOOD AND TIMOTHY J. WOOD

known to me or satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge that he/she/they executed the same for the purposes therein contained.

AS WITNESS: my hand and notarial seal.

My Commission Expires:
8/1/2010                    Notary Public        RANDALL M. ROTHSTEIN

**STATE OF   MARYLAND   ,**                    MONTGOMERY   County ss:

I Hereby Certify, That on this   29TH day of   SEPTEMBER, 2006   , before me, the subscriber, a Notary Public of the State of   MARYLAND   and for the   COUNTY AFORESAID   ,
personally appeared   RANDALL M. ROTHSTEIN

the agent of the party secured by the foregoing Deed of Trust, and made oath in due form of law that the consideration recited in said Deed of Trust is true and bona fide as therein set forth and that the actual sum of money advanced at the closing transaction by the secured party was paid over and disbursed by the party or parties secured by the Deed of Trust to the Borrower or to the person responsible for disbursement of funds in the closing transaction or their respective agent at a time not later than the execution and delivery by the Borrower of this Deed of Trust; and also made oath that he is the agent of the party or parties secured and is duly authorized to make this affidavit.

AS WITNESS: my hand and notarial seal.
My Commission Expires:
8/1/08                    Notary Public        MARCIA F. CANDIDO

This is to certify that the within instrument was prepared

SONJA SHRIEVES
National City Mortgage
a division of National City Bank
                              Initials:

Page 15 of 15                              Form 3021  1/01

33151   310

# ADJUSTABLE RATE RIDER

**(Index: One-Year London Interbank Offered Rate ("LIBOR") As Published in *The Wall St. Journal* – Rate Caps)**
**(Assumable after Initial Period) (45 Day Lookback)**

This Adjustable Rate Rider is made this     **29th** day of     **September 2006**     and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note as amended and supplemented by the Interest Only Payment Period Note Addendum to Adjustable Rate Note (collectively the "Note") to   **National City Mortgage**
  **a division of National City Bank**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

  **15630 BLACKBERRY DR , N POTOMAC , Maryland 20878**

[Property Address]

**THE NOTE PROVIDES FOR A PERIOD OF MONTHLY PAYMENTS OF INTEREST ONLY FOLLOWED BY MONTHLY PAYMENTS OF BOTH PRINCIPAL AND INTEREST. THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INITIAL INTEREST RATE AND MONTHLY PAYMENT DURING AND AFTER THE INTEREST ONLY PAYMENT PERIOD. THE NOTE ALSO LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of     **6.375** %. The First Principal and Interest Due Date is the first monthly payment date after the     **120**     monthly payment is due. The Note provides for changes in the interest rate and the monthly payments as follows:

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A)    Change Dates**
The interest rate I will pay may change on the first day of     **October 2016**     , and may change on that day every  twelfth (12th) month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B)    The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.
The "Index" is the One-year Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

Page 1 of 4

One-year LIBOR Interest Only Rider - Multistate
120 Interest Only Payments
Assumable After Initial Period
(08/05)

33151   311

If the Index is no longer available, the Note Holder will choose a new index based upon comparable information. The Note Holder will give me notice of this choice.

**(C)    Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND ONE-QUARTER**                 percentage points (    **2.250**        %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine my new monthly payment as follows:

        **(i)    Interest Only Payment Period.**  For monthly payments due after the first Change Date up to but not including the First Principal and Interest Due Date, the Note Holder will determine the amount of the monthly payment that would be sufficient to pay the interest that accrues on the unpaid principal that I am expected to owe at the Change Date at my new interest rate determined above in this Section 4(C). The result of this calculation will be the new amount of my Interest Only Payment until the next Change Date unless I make a partial Prepayment as provided in Section 5 of the Note.

        **(ii)    Principal and Interest Payments Due Beginning With the First Principal and Interest Due Date.**  For monthly payments due on or after the First Principal and Interest Due Date, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate determined above in this Section 4(C) in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)    Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **11.375**    % or less than    **2.250**        %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than    **TWO**                        percentage points (    **2.000**        %) from the rate of interest I have been paying for the preceding twelve months. My interest rate will never be greater than    **11.375**    %.

**(E)    Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first payment date after the Change Date until the amount of my monthly payment changes again.

**(F)    Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

**1.        UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:**

        **Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

One-year LIBOR Interest Only Rider - Multistate
120 Interest Only Payments
Assumable After Initial Period
(08/05)

33151 3121

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2.     AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

One-year LIBOR Interest Only Rider - Multistate
120 Interest Only Payments
Assumable After Initial Period
(08/05)

33151   313

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_S. Giovanna D Wood._ (Seal)   _Timothy J Wood_ (Seal)
SALLY GIOVANNA DIANDERAS WOOD Borrower   TIMOTHY J WOOD   Borrower

_____ (Seal)   _____ (Seal)
Borrower   Borrower

_____ (Seal)   _____ (Seal)
Borrower   Borrower

_____ (Seal)   _____ (Seal)
Borrower   Borrower

Page 4 of 4

One-year LIBOR Interest Only Rider - Multistate
120 Interest Only Payments
Assumable After Initial Period
(08/05)

33151    314

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this        29th        day of
**September 2006**                                    , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the
"Security Instrument") of the same date, given by the undersigned (the "Borrower") to
secure Borrower's Note to
**National City Mortgage a division of**
**National City Bank**
(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at:

**15630 BLACKBERRY DR, N POTOMAC, Maryland 20878**
[Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling,
together with other such parcels and certain common areas and facilities, as described in

**LIBER 8948 AT FOLIO 380**

(the "Declaration"). The Property is a part of a planned unit development known as
**QUINCE ORCHARD KNOLLS**

[Name of Planned Unit Development]
(the "PUD"). The Property also includes Borrower's interest in the homeowners association
or equivalent entity owning or managing the common areas and facilities of the PUD (the
"Owners Association") and the uses, benefits and proceeds of Borrower's interest.

   **PUD COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
   **A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the
PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii)
articles of incorporation, trust instrument or any equivalent document which creates the
Owners Association; and (iii) any by-laws or other rules or regulations of the Owners
Association. Borrower shall promptly pay, when due, all dues and assessments imposed
pursuant to the Constituent Documents.

**MULTISTATE PUD RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT**
**Form 3150 1/01**

                              Page 1 of 3            Initials:
**VMP®**              VMP Mortgage Solutions, Inc. (800)521-7291

Case 25-10092   Doc 41-1   Filed 03/19/26   Page 36 of 65

B3151   315

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials:

Form 3150 1/01

33151  316

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
                        -Borrower

_____S. Giovanna D. Wood__.-(Seal)
SALLY GIOVANNA DIANDERAS WOOD -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
TIMOTHY J WOOD          -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

VMP                    Page 3 of 3                    **Form 3150 1/01**

# Exhibit C

33872    782

This Instrument Prepared By:
* Gary M. Bullio

After Recording Return To:
National City Mortgage
PO Box 8800      Dayton,
OH  45401-8800

2001 FEB 27  A 8: 44
FILED
LORETTA E. KNIGHT

Recording Requested by &
When Recorded Return To:
US Recordings, Inc.
PO Box 19989
Louisville, KY  40259

Parcel:

**SPACE ABOVE THIS LINE FOR RECORDER'S USE**

NCM#:

MIN and MERS Phone:      PLEASE RECORD 1ST DIANDERAS WOOD, SALLY GIOVANNA
                                                    Recording District: Montgomery

**ASSIGNMENT OF Deed of Trust**

For value received, the undersigned, hereby grants, assigns and transfers to:  National City Mortgage Co., a subsidiary of National City Bank  located at   3232 NEWMARK DR, Miamisburg, OH  45342.  All beneficial interest under that certain Deed of Trust dated 9/29/2006 executed by:

**Trustor(s)    SALLY GIOVANNA DIANDERAS WOOD       TIMOTHY J WOOD**

to Trustee for NATIONAL CITY MORTGAGE, A DIVISION OF NATIONAL CITY BANK     recorded  10/13/2006
as   Instrument No.:        in Book/Volume: 33151 Page: 295 of the Official Records of Montgomery County,
Maryland describing the land therein:

Property Address:      15630 BLACKBERRY DR, N POTOMAC, MD  20878

Parcel I O#

Legal Description Attached

```
IMP FD SURE        20.00
RECORDING FEE      20.00
TOTAL              40.00
Rest MD87    Rcpt # 27662
LEK   KAO      Blk # 5559
Feb 27, 2007       08:34 am
```

Together with the Note or Notes therein described or referenced to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

9/29/2006 to be executed the Date of Filing/Recording

NATIONAL CITY MORTGAGE, A  DIVISION OF
NATIONAL CITY BANK

*Angela Tegtmeyer*

*State of OHIO       County of MONTGOMERY*        Angela Tegtmeyer, Delivery Shipper

On 10/23/2006 before me, CARRIE MOTZ the undersigned, a Notary Public in and for the State of OHIO, personally appeared Angela Tegtmeyer, Delivery Shipper of NATIONAL CITY MORTGAGE, A  DIVISION OF NATIONAL CITY BANK personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that for her signature on the instrument the person, or the entity upon behalf of which she acted, executed the instrument.

*Carrie Motz*
CARRIE MOTZ, Notary Public in and for the State of OHIO
My Commission Expires: 7/2/2011   My County of Residence: WARREN

NOTARIAL SEAL
STATE OF OHIO

ASGMT DOT
LOAN#
US Recordings

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) LEK 33872, p. 0782, MSA_CE63_33829. Date available 03/06/2007. Printed 08/19/2019.

33872 183

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) LEK 33872, p. 0783, MSA_CE63_33829. Date available 03/06/2007. Printed 08/19/2019.

This Instrument Prepared By:
Todd Schaney, Delivery Shipper
National City Mortgage Co.
3232 Newmark Drive
Miamisburg, OH 45342

AFTER RECORDING RETURN TO:
Residential Funding Corporation
One Meridian Crossings
Minneapolis, MN 55423

**Recording Requested by &**
**When Recorded Return To:**
US Recordings, Inc.
PO Box 19989
Louisville, KY 40259

Parcel:

2001 FEB 27 A 8:44
FILED

**SPACE ABOVE THIS LINE FOR RECORDER'S USE**

NCM#: 0004881169    POOL#: 0001218963    1

**PLEASE RECORD 2ND**

DIANDERAS WOOD, SALLY

MIN and MERS Phone:

Recording District: Montgomery

### Assignment Of Deed of Trust

For value received, the undersigned, hereby grants, assigns and transfers to:

**Mortgage Electronic Registration Systems, Inc., its successors**
**and assigns, PO Box 2026 Flint, Michigan 48501-2026**

All beneficial interest under that certain Deed of Trust dated 9/29/2006 executed by:
**Trustor(s)   SALLY GIOVANNA DIANDERAS WOOD      TIMOTHY J WOOD**
to the Trustee for National City Mortgage, a division of National City Bank   recorded 10/13/2006 at 2007
Instrument No.: _____   in Book/Volume: 33151   Page: 295   of the
Official Records of Montgomery County, Maryland describing the land therein:

Parcel ID#

IMP FD SURE          20.00
RECORDING FEE        20.00
TOTAL                40.00
Res# #007   Rcpt # 27662
LEK   KAB   Blk # 5569
              03:34 am

Property Address:   **15630 BLACKBERRY DR, N POTOMAC, MD  20878**

Legal Description As Per Deed of Trust Referred to Herein

Together with the Note or Notes therein described or referenced to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Assignment Executed to be Effective as of

**National City Mortgage Co.,**
a subsidiary of National City Bank

MERS Phone:

MIN#

*State of Ohio   County of Montgomery*

ANGELA TEGTMEYER
DELIVERY SHIPPER

On 10/26/2006 before me, KATHLEEN LEWIS the undersigned, a Notary Public in and for the State of Ohio, personally appeared  ANGELA TEGTMEYER, DELIVERY SHIPPER of National City Mortgage Co.,a subsidiary of National City Bank  personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that for her signature on the instrument the person, or the entity upon behalf of which she acted, executed the instrument.



KATHLEEN LEWIS, Notary Public in and for the State of Ohio
My Commission Expires: 1/6/2009   My County of Residence:  Montgomery

NOTARIAL SEAL
STATE OF OHIO

ASGMT DOT
LOAN#
US Recordings

48339   286

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) LEK 48339, p. 0286, MSA_CE63_48296. Date available 02/25/2014. Printed 11/03/2016.

## Assignment of Deed of Trust

Dated: **February 13, 2014**

MIN: ▮▮▮▮▮▮
MERS Phone: ▮▮▮▮▮▮

For value received **Mortgage Electronic Registration Systems, Inc.**, P.O. Box 2026, Flint, MI **48501-2026**, the undersigned hereby grants, assigns and transfers to **Ally Bank** all beneficial interest under a certain Deed of Trust dated **September 29, 2006** executed by **SALLY GIOVANNA DIANDERAS WOOD AND TIMOTHY J WOOD** and recorded in Book **33151** on Page(s) **295** as Document Number **XX** on **October 13, 2006** in the office of the County Clerk of Circuit Court of Montgomery County, Maryland.

Parcel ID #: ▮▮▮▮▮▮

Mortgage Electronic Registration Systems, Inc.

By: _____

**Matthew Robert Marsh,**
**Assistant Secretary**

STATE OF **Minnesota**   )

COUNTY   **Ramsey**   ) SS

```
IMP FD SURE          40.00
RECORDING FEE        20.00
TOTAL                60.00
Rest M007   Rcpt # 56340
LEK    RC    Blk # 5010
Feb 21, 2014      02:40 PM
```

On **February 13, 2014** before me, **Pang Mee Yang** , Notary Public in and for said State personally appeared **Matthew Robert Marsh** , **Assistant Secretary** of **Mortgage Electronic Registration Systems, Inc.**, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the entity upon behalf of which the person acted, executed the instrument. WITNESS my hand and official seal.

Prepared By:
Tou Vang
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117

When Recorded Return To:
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117



Pang Mee Yang, Notary Public
My Commission expires: **January 31, 2017**

PANG MEE YANG
Notary Public-Minnesota
My Commission Expires Jan 31, 2017



2014 FEB 21   PM 2:39

FILED
LORETTA E. KNIGHT
CLERK'S OFFICE
MONTGOMERY CO. MD



# Exhibit D

50381  303

**MONTGOMERY COUNTY, MD**

After Recording Return To:
Cenlar FSB Attn: Loss Mitigation
425 Phillips Blvd
Ewing, NJ 08618

Blackstone Settlement Services, LLC
825 Glenside Avenue
Suite B
Wyncote, Pa 19095

APPROVED BY _Kam_

**APR 2 0 2015**

$ __0__ RECORDATION TAX PAID

$ __N/A__ TRANSFER TAX PAID

This Document was prepared by Jaclyn Maley

Servicer Loan # ███████
Investor Loan # ███████

[Space Above This Line For Recording Data]

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower and Co-Borrower(s): Sally Giovanna Dianderas Wood and Timothy J. Wood, Wife and Husband
Original Lender or Servicer ("Lender"): National City Mortgage
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 09/29/2006
Recorded 10/13/2006, in Book 33151, Page Number 295,
Lastly Assigned from Mortgage Electronic Registration Systems, Inc. ("MERS") to Ally Bank
Dated 02/13/2014 Recorded 02/21/2014, in Book 48339, at Page Number 286,

15530 Blackberry Drive, N. Potomac, Maryland 20878,
("Property"):
Please see attached Exhibit "A" for Legal Description.

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.      **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

   A.   I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B.   One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

   C.   There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

   D.   I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

   E.   Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

   F.   If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

   G.   I have made or will make all payments required under a trial period plan.

RECORDING FEE  40.00
                        20.00
                        60.00
Rcpt # 51838
blk # 954
2015 08:47 am

50381   304

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on ___9/1/2014___ (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on ___9/1/2014___.

A. The Maturity Date will be: ___6/1/2039___.

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan *and less Principal in the amount of __N/A__ which has been forgiven.* The new principal balance of my Note will be $626,043.62 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of ___2.625%___ will begin to accrue on the New Principal Balance as of ___8/1/2014___ and the first new monthly payment on the New Principal Balance will be due on ___9/1/2014___. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.625% | 8/1/2014 | $2,861.64 | $814.94 <br>May adjust periodically | $3,676.58 <br>May adjust periodically | 9/1/2014 | 60 |
| 6 | 3.625% | 8/1/2019 | $3,128.59 | $814.94 <br>May adjust periodically | $3,943.53 <br>May adjust periodically | 9/1/2019 | 12 |
| 7-24 | 4.250% | 8/1/2020 | $3,294.76 | $814.94 <br>May adjust periodically | $4,109.70 <br>May adjust periodically | 9/1/2020 | 226 |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

50381   305

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D.   I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.   If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.   **Additional Agreements.** I agree to the following:

A.   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.   That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.   That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E.   That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.   That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

50381   306

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any Interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, ███████████ In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

50381   307

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

In Witness Whereof, the Lender and I have executed this Agreement.

Ally Bank      -Lender

By: _____
Marianne Doroba
Vice President and Assistant Secretary
Date   11-20-14

_____ (Seal)
Sally Giovanna Dianderas Wood -Borrower

Date _____

_____ (Seal)
Timothy J. Wood    -Borrower

Date _____

_____[Space Below This Line For Acknowledgement]_____

STATE OF MARYLAND
COUNTY OF ___Washington DC___ ss:

Personally appeared before me, a Notary Public, in and for said county and state, on this _28th_ day of ___October___, 2014, the within named Sally Giovanna Dianderas Wood and Timothy J. Wood, Wife and Husband, known to me, or satisfactorily proven, to be the persons whose names are subscribed to the within instrument and who acknowledges that they executed the same for the purposes therein contained.

_____
Notary Public
Printed Name: ___Joyce B Stone___

My Commission Expires:

_____

Joyce B. Stone
Notary Public, District of Columbia
My Commission Expires 11/14/2014

AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM
Form 3157    3/09 (rev. 10/10) (page 5 of 6 pages)

50381   308

## Exhibit "A"

LOT NUMBERED ONE (1) IN BLOCK LETTERED "R", IN THE SUBDIVISION KNOWN AS "PLAT 11, QUINCE ORCHARD KNOLLS", AS PER PLAT THEREOF DULY RECORDED AMONG THE LAND RECORDS OF MONTGOMERY COUNTY, MARYLAND IN PLAT BOOK 152 AT PLAT NO. 17279.

50381   309

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

In Witness Whereof, the Lender and I have executed this Agreement.

_____
Ally Bank                              -Lender

By: _____Marianne Doroba_____
Vice President and Assistant Secretary
Date   11-20-14

_____ (Seal)
Sally Giovanna Diandcras Wood -Borrower

Date _____

_____ (Seal)
Timothy J. Wood    10/29/14    -Borrower
Date

_____[Space Below This Line For Acknowledgement]_____

STATE OF MARYLAND
COUNTY OF Anne Arundel _____ SS:


Personally appeared before me, a Notary Public, in and for said county and state, on this 29 day of ___ Oct. _____ 2014, the within named Sally Giovanna Dianderas Wood and Timothy J. Wood, Wife and Husband, known to me, or satisfactorily proven, to be the persons whose names are subscribed to the within instrument and who acknowledges that they executed the same for the purposes therein contained.

_____
Notary Public
Printed Name: Bonnie J. Lowrimore

My Commission Expires:

Bonnie J. Lowrimore, Notary Public
Anne Arundel County
The State of Maryland
My Commission Expires 03/02/2018


SEAL/STAMP


MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3157    3/09 (rev. 10/10) (page 5 of 6 pages)

50381   310

Exhibit "A"

LOT NUMBERED ONE (1) IN BLOCK LETTERED "R", IN THE SUBDIVISION
KNOWN AS "PLAT 11, QUINCE ORCHARD KNOLLS", AS PER PLAT THEREOF
DULY RECORDED AMONG THE LAND RECORDS OF MONTGOMERY COUNTY,
MARYLAND IN PLAT BOOK 152 AT PLAT NO. 17279.

50381    311

# NOTARY ACKNOWLEDGEMENT

Loan Modification
**SALLY GIOVANNA DIANDERAS**
**TIMOTHY J WOOD**
Loan ▮▮▮▮▮▮

**State of New Jersey, County of <u>Mercer</u> )ss:**

I CERTIFY that on this the __20th__ day of <u>November, 2014</u>, <u>Marianne Doroba</u> <u>Vice President</u> at 425 Phillips Blvd., Ewing, NJ 08618 personally came before me and acknowledged under oath to my satisfaction, that this person:

a) is named in and personally signed the attached document; and

b) signed and delivered this document as her act and deed; and for the purposes therein expressed.

_____
Notary Public

Print Name: <u>Phoolmattie Rampersaud</u>

My commission expires:

__8-21-18__

SEAL/STAMP

50381   312

## CERTIFICATE OF PREPARATION

Loan Modification
**SALLY GIOVANNA DIANDER**
**TIMOTHY J WOOD**
Loan #▮▮▮▮▮▮▮

I hereby certify that the herein instrument was prepared by an attorney admitted to practice before the Court of Appeals of Maryland, or under an attorney's supervision, or that the herein instrument was prepared by one of the parties name in the instrument.

_____
(Signature)

Donna Wallace, Post Closing Processor
(Printed Name and Title)

50381    313

## State of Maryland Land Instrument Intake Sheet
☐ Baltimore City    ☑ County: Montgomery

*Information provided is for the use of the Clerk's Office, State Department of Assessments and Taxation, and County Finance Office Only.*
(Type or Print in Black Ink Only—All Copies Must Be Legible)

| 1 | Type(s) of Instruments | ( ☐ Check Box if addendum Intake Form is Attached.) | | | |
|---|---|---|---|---|---|
| | | Deed / Deed of Trust | Mortgage / Lease | X Other loan modification | Other _____ |
| 2 | Conveyance Type Check Box | Improved Sale Arms-Length [1] | Unimproved Sale Arms-Length [2] | Multiple Accounts Arms-Length [3] | Not an Arms-Length Sale [9] |

| 3 | Tax Exemptions (if applicable) Cite or Explain Authority | Recordation | |
|---|---|---|---|
| | | State Transfer | |
| | | County Transfer | |

| 4 | | Consideration Amount | | Finance Office Use Only Transfer and Recordation Tax Consideration | |
|---|---|---|---|---|---|
| | Consideration and Tax Calculations | Purchase Price/Consideration | $ | Transfer Tax Consideration | $ |
| | | Any New Mortgage | $ | X ( )% = | $ |
| | | Balance of Existing Mortgage | $ | Less Exemption Amount − | $ |
| | | Other: | $ | Total Transfer Tax = | $ |
| | | Other: | $ | Recordation Tax Consideration | $ |
| | | | | X ( ) per $500 = | $ |
| | | Full Cash Value: | $ | TOTAL DUE | $ |

| 5 | | Amount of Fees | Doc. 1 | Doc. 2 | |
|---|---|---|---|---|---|
| | | Recording Charge | $ | $ | Agent: |
| | | Surcharge | $ | $ | Tax Bill: |
| | Fees | State Recordation Tax | $ | $ | |
| | | State Transfer Tax | $ | $ | C.B. Credit: |
| | | County Transfer Tax | $ | $ | |
| | | Other | $ | $ | Ag. Tax/Other: |
| | | Other | $ | $ | |

| 6 | Description of Property | District | Property Tax ID No. (1) | Grantor Liber/Folio | Map | Parcel No. | Var. LOG ☐ (5) |
|---|---|---|---|---|---|---|---|
| | SDAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(g)(3)(i). | Subdivision Name | | Lot (3a) | Block (3b) | Sect/AR (3c) | Plat Ref. | SqFt/Acreage (4) |
| | | plat 11 Quince orchard knolls | | 1 | | | | |

Location/Address of Property Being Conveyed (2)
15830 Blackberry Drive N. Poomac, maryland 20878

| Other Property Identifiers (if applicable) | Water Meter Account No. |
|---|---|
| | |

Residential ☑ or Non-Residential ☐    Fee Simple ☑ or Ground Rent ☐ Amount: _____
Partial Conveyance? ☐ Yes ☑ No    Description/Amt. of SqFt/Acreage Transferred: _____
If Partial Conveyance, List Improvements Conveyed: _____

| 7 | Transferred From | Doc. 1 – Grantor(s) Name(s) | Doc. 2 – Grantor(s) Name(s) |
|---|---|---|---|
| | | Sally Giovanna Wood | |
| | | Timothy J. Wood | |
| | | Doc. 1 – Owner(s) of Record, if Different from Grantor(s) | Doc. 2 – Owner(s) of Record, if Different from Grantor(s) |

| 8 | Transferred To | Doc. 1 – Grantee(s) Name(s) | Doc. 2 – Grantee(s) Name(s) |
|---|---|---|---|
| | | national City mortgage | |
| | | New Owner's (Grantee) Mailing Address | |

| 9 | Other Names to Be Indexed | Doc. 1 – Additional Names to be Indexed (Optional) | Doc. 2 – Additional Names to be Indexed (Optional) |
|---|---|---|---|
| | | | |

| 10 | Contact/Mail Information | Instrument Submitted By or Contact Person | ☑ Return to Contact Person |
|---|---|---|---|
| | | Name: jill moroz | |
| | | Firm   blackstone settlement services | ☐ Hold for Pickup |
| | | Address: 828 Glenside Ave suite B | |
| | | wyncote PA 19095    Phone: (215) 572-5090 | ☐ Return Address Provided |

11    IMPORTANT: *BOTH THE ORIGINAL DEED AND A PHOTOCOPY MUST ACCOMPANY EACH TRANSFER*

| Assessment Information | ☐ Yes ☐ No | Will the property being conveyed be the grantee's principal residence? |
|---|---|---|
| | ☐ Yes ☐ No | Does transfer include personal property? If yes, identify: _____ |
| | ☐ Yes ☐ No | Was property surveyed? If yes, attach copy of survey (if recorded, no copy required). |

### Assessment Use Only – Do Not Write Below This Line

| Terminal Verification | Agricultural Verification | Whole | Part | Tran. Process Verification |
|---|---|---|---|---|
| Transfer Number | Date Received: | Deed Reference: | Assigned Property No.: | |

| Year | 20 | 20 | Geo. | Map | Sub | Block |
|---|---|---|---|---|---|---|
| Land | | | Zoning | Grid | Plat | Lot |
| Buildings | | | Use | Parcel | Section | Occ. Cd. |
| Total | | | Town Cd. | Ex. St. | Ex. Cd. | |

REMARKS:

Distribution:    White – Clerk's Office    Canary – SDAT    AOC-CC-300 (6/2007)
                Pink – Office of Finance    Goldenrod – Preparer

**This is to certify that the attached Instrument has been prepared under the supervision of the undersigned Maryland attorney.**

Dan Harvey, Esquire
_____[Space Above This Line For Recording Data]_____
CENLAR, FSB
Loan No.: ███████

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 15th day of November, 2018 ,
between Sally Giovanna Dianderas Wood and Timothy J Wood, wife and husband

("Borrower/Grantor")

and Ally Bank

("Lender/Grantee"),
amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") and Timely
Payment Rewards Rider, if any, in the original loan amount of U.S. $ 629,600.00 and dated September 29th, 2006
recorded October 13th, 2006 , and recorded in Book/Liber 33151 , Page 295 , Instrument No.
N/A , of the Official Records of Montgomery County, Maryland , and
further assigned to Lender and recorded on February 21st, 2014, in Book 48339, Page 286, Instrument No. N/A

(2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal
property described in the Security Instrument and defined therein as the "Property," located at 15630 Blackberry
Dr N, Potomac, Maryland 20878

**The original principal balance was $629,600.00. The current unpaid principal balance is $577,052.36.
$52,427.26 will be added to the current unpaid principal balance resulting in a new principal balance of
$629,479.62.**

MARYLAND LOAN MODIFICATION AGREEMENT

Page 1 of 5

Loan No.: ▇▇▇▇▇▇

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

SEE EXHIBIT "B" ATTACHED HERETO AND MADE A PART HEREOF.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.      As of December 1st, 2018     , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $ 629,479.62        , consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.      Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of   4.625   %, from December 1st, 2018        . Borrower promises to make monthly payments of principal and interest of U.S. $ 2,880.68      , beginning on the  1st    day of  January        ,  2019     , and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.  If on   December 1st, 2058        , Borrower still owes amounts under this  modification agreement, Borrower will pay these amounts in full on that date, which is called the ("New Maturity Date"). The Borrower will make such payments at:

CENLAR, FSB
425 Phillips Blvd.
Ewing, NJ 08618

3.      If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.      Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the specified date in paragraph No. 1 above:

(a)      all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

---

**MARYLAND LOAN MODIFICATION AGREEMENT**                                      Page 2 of 5

Loan No.: █████████

(b)     all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.     Borrower understands and agrees that:

(a)     All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)     All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law.  Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)     All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)     Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

Loan No.: ▮▮▮▮▮

_____11/30/18_____
Date

_____11/30/18_____
Date

_____ (Seal)
Sally Giovanna Dianderas Wood        —Borrower

_____ (Seal)
Timothy J Wood        —Borrower

_____        _____ (Seal)
Date                                                —Borrower

_____        _____ (Seal)
Date                                                —Borrower

## BORROWER ACKNOWLEDGMENT

State of ___Maryland___        §
                                        §  ss.:
County of ___Harford___        §

    To Wit: I hereby certify, that on this___30th___ day of___Nov___ in the year___2018___, before the subscriber___Notary Public___
*[style of officer taking acknowledgment],* personally appeared  Sally Giovanna Dianderas Wood and Timothy J Wood
*[name of person making acknowledgment],* and acknowledged the foregoing instrument to be his act.

_____
(Signature)

_____
(Printed Name)

  Notary Public
Title of Officer

MARYLAND LOAN MODIFICATION AGREEMENT

Page 4 of 5

Loan No.: ▋▋▋▋▋

Ally Bank
_____
                                    —Lender

                                                12/11/18
                                    _____
                                                            -Date

By: _____

Printed Name: _____ FRANCINE BRYANT

Its: _____ Authorized Signer

## LENDER ACKNOWLEDGMENT

State of NJ                §
                           § ss.:
County of Mercer           §

    To Wit: I hereby certify, that on this __11__ day of __Dec__ in the year __2018__ , before the subscriber   Notary Public
*[style of officer taking acknowledgment]*, personally appeared ____FRANCINE BRYANT____ *[name of person making acknowledgment]*, who acknowledged himself/herself to be the of Ally Bank

*[name of said entity]* (the "Entity") and that he/she, as such officer, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the name of said Entity by himself/herself as such officer (and certified that this conveyance is not part of a transaction in which there is a sale, lease, exchange or other transfer of all or substantially all of the property and assets of said Entity).

(Seal)

NOTARY PUBLIC OF NEW JERSEY
ATIA KINARD
My Commission Expires October 28, 2021
ID# 50048570

_____
(Signature)

             Atia Kinard
_____
(Printed Name)

Notary Public
_____
Title of Officer

**After Recording Return To:**
RUTH RUHL, P.C.
Attn: Recording Department
12700 Park Central Drive, Suite 850
Dallas, Texas 75251

MARYLAND LOAN MODIFICATION AGREEMENT

Page 5 of 5

Loan No.: ▉▉▉▉

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice:** The undersigned hereby represents and warrants that I/we have each received and read a copy of this Notice on or before the execution of the "Loan Agreement." "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or any other thing of value or to otherwise extend credit or make a financial accommodation.

| | |
|---|---|
| Sally Giovanna Dianderas Wood     -Borrower | Timothy J Wood     -Borrower |
|     -Borrower |     -Borrower |

NOTICE OF NO ORAL AGREEMENTS (MULTISTATE)                                     Page 1 of 1

Loan No.: ███████

# CORRECTION AGREEMENT

**Borrower(s):** Sally Giovanna Dianderas Wood and Timothy J Wood

**Property:** 15630 Blackberry Dr N, Potomac, Maryland 20878

Words used in this Agreement are defined below. Words in the singular mean and include the plural and vice versa.

"Borrower" is Sally Giovanna Dianderas Wood and Timothy J Wood.

"Lender" is Ally Bank

, and its successors or assigns.
"Loan" means the debt evidenced by the Note and all sums due under the Security Instrument.
"Note" means the promissory note(s) signed by Borrower in favor of Lender or any assignee of Lender.
"Security Instrument" means the Deed of Trust/Mortgage/Security Deed, signed by Borrower in favor of Lender, securing payment of the Note.

AGREEMENT TO CORRECT OR PROVIDE ADDITIONAL DOCUMENTATION OR FEES: In consideration of the Loan Modification Agreement offered by Lender in the amount of $629,479.62 , which modifies the Note and Security Instrument, and regardless of the reason for any loss, misplacement, omission, misstatement or inaccuracy in any Loan documentation, Borrower agrees as follows: If any document is lost, misplaced, omitted, misstated or inaccurately reflects the true and correct terms and conditions of the Loan, upon request of Lender (including any assignee of Lender), Borrower will comply with Lender's request to execute, acknowledge, initial and/or deliver to Lender any documentation Lender deems necessary to replace and/or correct the lost, misplaced, omitted, misstated or inaccurate document(s). All documents Lender requests of Borrower shall be referred to as "Requested Documents." Borrower agrees to deliver the Requested Documents within ten (10) days after receipt by Borrower of a written request for such replacement. Borrower does hereby agree and covenant in order to assure that the Loan documentation executed this date will enable Lender to seek insurance or guaranty from the Department of Housing and Urban Development (HUD) or Department of Veteran's Affairs (VA), if applicable, or to conform with and be acceptable to the Federal National Mortgage Association (FNMA), Federal Home Loan Mortgage Corporation (FHLMC), Government National Mortgage Association (GNMA), or any other investor.

REQUEST BY LENDER: Any request under this Agreement may be made by the Lender (including assignees and persons acting on behalf of the Lender) and shall be _prima facie_ evidence of the necessity for same. A written statement addressed to Borrower at the address indicated in the Loan documentation shall be considered conclusive evidence of the necessity for Requested Documents.

BORROWER LIABILITY: If Borrower fails or refuses to execute, acknowledge, initial or deliver the Requested Documents to Lender within ten (10) days after being requested to do so by Lender, Borrower understands that Lender is relying on the representations contained herein and agrees to be liable for any and all loss or damage which Lender reasonably sustains thereby including, but not limited to, all reasonable attorneys' fees and costs incurred by Lender.

This Agreement shall inure to the benefit of Lender's successors and assigns and be binding upon the heirs, devises, personal representatives, successors and assigns of Borrower.

ACKNOWLEDGMENT OF RECEIPT

I hereby acknowledge receipt of this Correction Agreement and further acknowledge that I understand its provisions. Words used in this Correction Agreement mean and include the plural and vice versa.

_____
Sally Giovanna Dianderas Wood   -Borrower (Date)

_____
Timothy J Wood   -Borrower (Date)

_____
-Borrower (Date)

_____
-Borrower (Date)

**CORRECTION AGREEMENT**

Page 2 of 2

Loan No.: ███████

# ATTORNEY SELECTION NOTICE

By signing below, it is understood and agreed that you may hire a lawyer or attorney to advise you regarding this transaction and its consequences.

SELLER:

BORROWER:

N/A Modification
_____
(Date)

_____
Sally/Giovanna Diandaras Wood

_____
(Date)

N/A Modification
_____
(Date)

_____
Timothy J Wood

_____
(Date)

_____
(Date)

_____
(Date)

_____
(Date)

_____
(Date)

ATTORNEY SELECTION NOTICE -MULTISTATE

Page 1 of 1

**Exhibit A**

Lot numbered ONE (1) in Block lettered "R", in the subdivision known as "PLAT 11, QUINCE ORCHARD KNOLLS", as per plat thereof duly recorded among the Land Records of Montgomery County, Maryland in Plat Book 152 at Plat No. 17279.

Tax ID #: ██████████

# Exhibit E

| Loan Number: | ███████ | As Of: | 03/05/2026 |
|---|---|---|---|
| Last Name: | dianderas | BK Filed: | 01/06/2025 |
| | | BK#: | 25-10092 |

**Post-Petition Payment**

| Effective Date: | |
|---|---|
| 02/01/2025 | $4,040.66 |
| 01/01/2026 | $4,111.93 |
| 01/00/1900 | $0.00 |
| 01/00/1900 | $0.00 |
| 01/00/1900 | $0.00 |
| 01/00/1900 | $0.00 |
| 01/00/1900 | $0.00 |
| 01/00/1900 | $0.00 |

| Funds Tracking | | | Post-Petition Tracking | | | |
|---|---|---|---|---|---|---|
| Transaction Date | Amount | Fund Type (P-Post, T-Trustee, S-Stip Payment, B-Bypass BK) | Post Amount Received | Post Amount Applied (*Moves to PP PMT Suspense*) | Post-Petition Date Applied | Debtor Suspense |
| 02/03/2025 | $ 4,500.00 | p | $4,500.00 | $4,040.66 | 02/01/2025 | $459.34 |
| 03/04/2025 | $ 4,500.00 | p | $4,500.00 | $4,040.66 | 03/01/2025 | $918.68 |
| 04/08/2025 | $ 4,550.00 | p | $4,550.00 | $4,040.66 | 04/01/2025 | $1,428.02 |
| 05/27/2025 | $ 4,500.00 | p | $4,500.00 | $4,040.66 | 05/01/2025 | $1,887.36 |
| 06/16/2025 | $ 4,500.00 | p | $4,500.00 | $4,040.66 | 06/01/2025 | $2,346.70 |
| 08/06/2025 | $ 4,500.00 | p | $4,500.00 | $4,040.66 | 07/01/2025 | $2,806.04 |
| 08/07/2025 | $ - | | | | | $2,806.04 |
| 08/14/2025 | $ (4,500.00) | p | -$4,500.00 | -$4,040.66 | NSF | $2,346.70 |
| 08/25/2025 | $ 4,500.00 | p | $4,500.00 | $4,040.66 | 07/01/2025 | $2,806.04 |
| 09/09/2025 | $ 4,500.00 | p | $4,500.00 | $4,040.66 | 08/01/2025 | $3,265.38 |
| 10/06/2025 | $ 4,500.00 | p | $4,500.00 | $4,040.66 | 09/01/2025 | $3,724.72 |
| 11/14/2025 | $ 10,442.44 | t | | | | $3,724.72 |
| 11/17/2025 | $ - | | | | | $3,724.72 |
| 11/17/2025 | $ - | | | | | $3,724.72 |
| 11/17/2025 | $ - | | | | | $3,724.72 |
| | | | | | | $3,724.72 |
| | | | | | | $3,724.72 |
| 12/17/2025 | $ 4,500.00 | p | $4,500.00 | $4,040.66 | 10/01/2025 | $4,184.06 |
| | | | | $4,040.66 | 11/01/2025 | $143.40 |
| 12/23/2025 | $ 4,500.00 | p | $4,500.00 | $4,040.66 | 12/01/2025 | $602.74 |
| 01/16/2026 | $ 2,397.10 | t | | | | $602.74 |
| | | | | | | $602.74 |
| 02/13/2026 | $ 7,054.25 | t | | | | $602.74 |
| | | | | | | $602.74 |
| | | | | | | $602.74 |